**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MICHAEL G. WOLFF,** | * | |
| | * | |
| **Trustee/Appellant** | * | |
| | * | |
| v. | * | **Civil No. PJM 06-2322** |
| | * | |
| **UNITED STATES,** | * | |
| | * | |
| **Defendant/Appellee** | * | |
| | * | |

**OPINION**

The Trustee has appealed a Bankruptcy Court Order dismissing the Trustee's Complaint against the United States for Avoidance and Recovery of Preferential Payments and/or Fraudulent Conveyances and Request for Declaratory Judgment. The Court heard oral argument on the appeal and took the matter under advisement. For the reasons set forth below, the Court AFFIRMS the Bankruptcy Court's Order IN PART and VACATES it IN PART.

**I.**

Debtor Firstpay was a company whose ostensible purpose was to receive payments from client companies, make payroll disbursements to the clients' employees, and transmit other payments to the Internal Revenue Service ("IRS") to satisfy client tax liabilities. In reality, Firstpay was engaged in a complex Ponzi-type scheme devised to line the pockets of its principal operative, Mark Rothman, whose supposed death and burial are currently being investigated by the FBI.

Firstpay's modus operandi was to deposit all of its clients' money into a single fund. Occasionally, it disbursed money to the IRS to satisfy or partially satisfy some of its clients' outstanding tax obligations. But money paid by one taxpayer client was used to pay off the tax

liabilities and penalties of a different client.

Much of the client money intended for the IRS never reached its destination, going instead to Rothman to support a lavish lifestyle. Firstpay's clients were apparently unaware of the nonpayment of their taxes because, in the course of its operations, Firstpay undertook to change the clients' addresses with the IRS, substituting its own address for those of the clients.[1] Accordingly, any nonpayment notices from the IRS to the clients were delivered to Firstpay. In the course of Firstpay's bankruptcy proceeding, as it turned out, truckloads of these notices were found in Firstpay's offices.

In the ninety days prior to Firstpay's involuntary bankruptcy petition, Firstpay paid the IRS $28,000,000 on behalf of its clients. In the year prior to the filing, it paid $112,000,000 and in the three years prior, $336,000,000. The IRS, however, citing confidentiality concerns, has refused to make known to the Trustee or the Court how these millions of dollars were applied to the obligations

---

[1] The IRS seemingly violated its own procedures by allowing Firstpay - a third party - to change the addresses of record for its clients. As a rule, the IRS does not credit change of address information from third parties: "[C]hange of address information that a taxpayer provides to a third party, such as a payor or another government agency, is not clear and concise notification of a different address for purposes of determining a last known address." 26 C.F.R 301.6212-2(b)(2). Authorized representatives are allowed to fill out the IRS Change of Address Form, Form 8822; however, representatives filling out the form for a taxpayer must attach a copy of a valid power of attorney. The form explains that a representative "is a person who has a valid power of attorney to handle tax matters or is otherwise authorized to sign tax returns for the business." According to the Trustee, none of Firstpay's employees were representatives empowered to have clients' addresses changed for purposes of receiving IRS notices because none of the Firstpay employees were Certified Public Accountants. Instead, Firstpay's employees served as "unenrolled return preparers," such that they could prepare, but not sign, tax returns. Correspondence from the IRS to Firstpay confirms that "Unenrolled Return Prepares can NOT be given power to sign for the taxpayer." Thus, the Trustee argues, these unenrolled return preparers did not have the power to sign the change of address forms for each client.

While the IRS' disregard of its own procedures is troublesome, the Court finds no authority for it to impose any particular remedy under the circumstances.

of Firstpay's various taxpayer clients. The IRS apparently takes the view that it can arbitrarily decide which taxpayer clients of Debtor, if any, will receive credit for taxes paid and can then determine for itself which other taxpayer clients it will proceed against to collect taxes it deems are due. Indeed, the IRS claims that many of Firstpay's clients still owe taxes for the years prior to the bankruptcy filing and therefore has pursued collection efforts against them, prompting the former clients to file Proofs of Claim against Firstpay's estate.

Against this background, the Trustee filed a nine-count Complaint against the United States in the Bankruptcy Court, seeking: a declaratory judgment that the IRS has no claims against the Debtor's clients;[2] avoidance of preferential transfers under 11 U.S.C. § 547; avoidance of fraudulent conveyances under 11 U.S.C. § 548 and Maryland Commercial Law, Md. Code Ann., Comm. Law Article § 15-204, *et seq.*, and a turnover of funds under 11 U.S.C. § 550. The United States moved for summary judgment in the Bankruptcy Court, following which that court, by Order entered on August 2, 2006, dismissed the claims for declaratory judgment and preferential transfer under § 547, but denied summary judgment on the remaining counts, i.e. those alleging fraudulent conveyance. Those counts eventually came on for trial before the Bankruptcy Court.

Following trial, the Bankruptcy Court, by Order entered on August 17, 2006, dismissed all remaining counts. Its Opinion accompanying the Order sets forth the reasons for its decision, namely that (1) it lacked jurisdiction to grant a declaratory judgment as to the liability of the Debtor's creditors to the IRS; (2) the transfers made by the Debtor to the IRS were not recoverable

---

[2] Specifically, the Trustee sought a declaratory judgment that "The Defendant has and had no claims against the Debtor's clients who made tax payments to the Debtor, whose payments were not remitted to the Defendant, and who did not receive notice of the lack of payment due to the unauthorized change of address by the Defendant."

under § 547 as preferences; and (3) the transfers made by the Debtor to the IRS were not recoverable as fraudulent conveyances under § 548 or under the Maryland Uniform Fraudulent Conveyance Act. The Trustee appeals all these rulings.[3] This Court reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992).

**II.**

The Court first considers the Trustee's claim for declaratory judgment.

In the proceedings before the Bankruptcy Court, the United States argued that the Trustee did not have standing to assert such a claim and that, even if he did, the Anti-Injunction Act, 26 U.S.C. § 7421,[4] deprived the court of jurisdiction to hear a declaratory judgment claim. 26 U.S.C. § 7421. The Bankruptcy Court did not reach the issue of standing, finding instead that it lacked jurisdiction to hear the claim.

This Court, however, considers the issue of standing and finds it dispositive of the declaratory judgment claim.

The question of standing is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." *Warth et al. v. Seldin et al.,* 422 U.S. 490, 498-99 (1975) (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Here

---

[3] The Trustee also raises the issue of whether the Bankruptcy Court "erred in failing to grant Plaintiff's Motion to Compel prior to the commencement of the trial of the adversary proceeding." The Bankruptcy Court's ruling is not contained in the Order appealed from and the parties did not brief this issue. Since a decision on the Motion to Compel will not affect disposition of this case, the Court declines to consider this issue.

[4] The Anti-Injunction Act, 26 U.S.C. § 7421 provides: "(a) Tax.–Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

4

the Trustee, who stands in the shoes of the Debtor but not the Debtor's clients, does not have a personal stake in whether the Debtor's taxpayer clients are deemed to owe taxes to the IRS.

The Trustee has cited no legal authority that would confer standing in these circumstances. Instead, he relies on the general duties of a Chapter 7 Trustee and numerous policy arguments in support of why he should be able to proceed. He points out, for instance, that hundreds of claims filed against the Debtor's estate are claims of clients who allege that, although they paid money to the Debtor, they received no credit from the IRS for their tax payments. The Trustee argues that, without evidence as to how the monies received by the Debtor were applied by the IRS, there is no way of knowing whether the creditors' claims are legitimate and thus, in order for the Trustee to satisfy his statutory obligations of closing the estate expeditiously, investigating the financial affairs of the Debtor and objecting to the allowance of any claim that is improper, he has to be able to pursue the declaratory judgment claim. If he is not permitted to address all of these claims in one proceeding, he says, he will be required to wait while each client/taxpayer pursues its own separate tax refund against the IRS, a procedure which would bring the administration of the Debtor's estate to a halt.

Unfortunately, the administrative burden forecast by the Trustee does not suffice to bestow standing. In circumstances where the alleged harm is no more than a "generalized grievance" shared by a large group of people, harm alone does not warrant the exercise of jurisdiction. *Id.* at 499. Indeed, the Trustee must still "assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* In this case, the Trustee does not represent the creditors of the Debtor, he represents the Debtor; further, those creditors have a mechanism through which to pursue their own claims, i.e. they can make claims against the Debtor's estate and

5

pursue refunds with the IRS. In short, the Trustee lacks standing to assert the declaratory judgment claim.[5]

The Court also agrees with the Bankruptcy Court's view vis-a-vis its lack of jurisdiction. Even if the Trustee had standing to assert the declaratory judgment claim, the Bankruptcy Court was correct to find that it lacks jurisdiction to grant a declaratory judgment as to Debtor's former clients' tax liabilities.

The Trustee argues that this case is excepted from the prohibitions of the Anti-Injunction Act by reason of 11 U.S.C. § 505.[6][7] He argues that § 505 confers jurisdiction because Congress did not intend to limit the reach of the statute to only those controversies involving the tax obligations of a debtor, citing in support of the notion that § 505 may be applied to non-debtors *In re Major*

---

[5] Nor do the arguments of estoppel, raised for the first time by the Trustee on appeal, convey standing upon him. Insofar as the individual FirstPay clients may have estoppel claims against the IRS, a question which the Court expressly declines to reach, the Trustee still lacks standing to assert them.

That said, the position of the IRS is puzzling. It compounds its error of having permitted Debtor to change its clients' addresses with a surprisingly arrogant view of which clients of Debtor will be credited for the taxes that have been paid and to what extent. While efficiency, as the Court has noted, may not suffice to establish standing for the Trustee to crack through the IRS' stonewall, logic and good sense certainly suggest that some sort of comprehensive proceeding ought to be formulated in which the common facts of Debtor's misdeeds can be pursued.

[6] 11 U.S.C. § 505(a) provides: "(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

[7] The United States argues that § 505 has no applicability in this case because the action was not brought under § 505 and § 505 was not cited in the Trustee's Complaint. The Court does not reach the question of whether jurisdiction under § 505 was properly plead as the Court is satisfied that, even if properly plead, § 505 does not confer jurisdiction.

*Dynamics*, 14 B.R. 969 (Bankr. S.D. Cal. 1981). There the bankruptcy court held that it had jurisdiction to enjoin the assessment and collection of taxes from unsecured creditors of the debtor pursuant to § 505 despite the provisions of the Anti-Injunction Act. *Id.* at 972. The Trustee invokes the *Major Dynamics* test of whether the IRS assessment and collection activity "interferes with the orderly administration of the estate or the rehabilitation of the debtor," pointing out that because the majority of claims against the Debtor's estate in this case are those that result from claims the IRS is pursuing against creditors of the Debtor, multiple objections and numerous adversary proceedings will ensue before the Debtor's estate can be administered. *Id.*

Again, however sensible the Trustee's policy arguments for efficiency may be, just as they do not convey standing, they also do not establish jurisdiction under § 505. Indeed, a majority of courts considering the identical issue have declined to follow the holding in *Major Dynamics*. *See In re Wolverine Radio Co.,* 930 F.2d 1132, 1139 (6th Cir. 1991) ("However, in the last few years virtually all the courts which have considered the issue have concluded that section 505(a) does not extend the bankruptcy court's jurisdiction to parties other than the debtor"). This Court, joining the majority of courts, finds the Bankruptcy Court was correct to decline to follow the largely discredited *Major Dynamics* decision.

Given the Trustee's lack of standing and the Bankruptcy Court's lack of jurisdiction under § 505, the Court AFFIRMS the Bankruptcy Court's dismissal of the declaratory judgment claim.

## III.

The Court turns to the question of whether the transfers at issue may be avoided as preferential.

Under 11 U.S.C. § 547(b) of the Bankruptcy Code, a trustee can avoid any transfer of an interest of the debtor in property:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
>    (A) on or within 90 days before the date of the filing of the petition; or
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

It is undisputed that the transfer of funds from the Debtor to the IRS in this case was a transfer of an interest of the Debtor in property and that the Debtor was insolvent at the time of the transfer. Before the Bankruptcy Court, the IRS admitted that it was not a creditor of Debtor and, thus, that it had received more than it would have received in a distribution under Chapter 7. Accordingly, having met the elements set forth in § 547(b)(3) and (5), the Trustee, to prove his preference case under § 547(b), needed only to show that the payments to the IRS were made "to or for the benefit of a creditor" under § 547(b)(1), that they were made "for or on account of an antecedent debt owed by the debtor" under § 547(b)(2) and that they were made pursuant to the criteria set forth in § 547(b)(4).

The Bankruptcy Court found that the Trustee's claims of preferential transfer failed for

8

three reasons. First, presumably referring to the requirements set forth in § 547(b)(1), it found that the IRS (United States) was not a creditor of Debtor but of Debtor's former clients and that the transfers in question were made by Debtor on behalf of its clients for taxes owed by the clients to the IRS. Second, the Bankruptcy Court determined that the transfers alleged by Debtor were not made for an antecedent debt owed by Debtor. And finally, the Bankruptcy Court found claims under 11 U.S.C. § 547(b)(4)(B) excluded because the IRS was not an "insider" as defined in 11 U.S.C. §101(31). The Court considers each of these findings.

First, as the Bankruptcy Court concluded, it is clear that the IRS was not a creditor of Debtor and thus that the transfer of an interest of the Debtor in property was clearly not "to . . . a creditor." § 547(b)(1). Nonetheless, the transfer may still have been "for the benefit of a creditor," i.e. Debtor's clients, a proposition which it appears the Bankruptcy Court did not deal with. As the Trustee explains, the position of the IRS has been that, notwithstanding the fact that the clients paid over their tax obligations to the Debtor, the clients were not relieved of their obligations to the IRS because the Debtor did not pay the funds to the IRS. But by the same token, it follows that each time the Debtor received payments intended for the IRS from a particular client, a creditor/debtor relationship was created between the client and the Debtor. And when the Debtor subsequently paid over some of the client funds to the IRS by reason of its obligation to its client, the client's obligation to the IRS was simultaneously satisfied. Thus, the Debtor's payment to the IRS became a payment "for the benefit of a creditor."[8] The Court

---

[8] The Trustee acknowledges that there is one way in which such a payment from the Debtor to the IRS would not have been "for the benefit of a creditor," *viz.* where the Debtor, notwithstanding its failure to pay the money over to the IRS, was not a creditor of its client at the time it made the payment. The Trustee concedes that under the provisions of the "Client Services Agreement" between the Debtor and its clients, the clients agree to hold the Debtor

9

believes the Trustee has the better part of this argument.

The Court next considers whether the payments made by the Debtor to the IRS were made for or on account of an antecedent debt owed by the Debtor. After finding that the IRS was not a creditor of the Debtor, the Bankruptcy Court concluded that the transfers alleged by Debtor were not made for an antecedent debt owed by Debtor. Again, this Court takes a different view. While it is true that the Debtor owed no debt of its own to the IRS, the Court is satisfied that the "antecedent debt" referred to in § 547(b)(2) can be located in the Debtor's debts to its taxpayer clients. Having found that a debtor/creditor relationship existed as between the Debtor and its clients, the Court now finds that the payments made to the IRS by the Debtor were made on account of the Debtor's antecedent debts to its own clients.

The Bankruptcy Court's final reason for dismissing the Trustee's preference claim was that the United States was not an "insider" as defined in 11 U.S.C. §101(31)[9] and as required in §

---

harmless for failure to pay taxes and, thus, the Debtor was not indebted to its clients despite its failure to make payments. The Bankruptcy Court held this provision of the contract to be void as contrary to public policy, and the Court agrees with that conclusion. *See, e.g., United States v. King,* 840 F.2d 1276, 1283 (6th Cir. 1988) ("Western legal tradition prohibits contracts consenting in advance to suffer assaults and other criminal wrongs. They are void as against public policy"); *Maryland-National Capital Park and Planning Comm'n v. Washington Nat. Arena,* 282 Md. 588, 606 (1978) (noting that Maryland courts have stricken voluntary bargains on public policy grounds "in those cases where the challenged agreement is patently offensive to the public good").

[9] The term "insider" includes--
(A) if the debtor is an individual--
    (i) relative of the debtor or of a general partner of the debtor;
    (ii) partnership in which the debtor is a general partner;
    (iii) general partner of the debtor; or
    (iv) corporation of which the debtor is a director, officer, or person in control;
(B) if the debtor is a corporation--
    (i) director of the debtor;
    (ii) officer of the debtor;

547(b)(4)(B).[10]  The Court is in accord with the Bankruptcy Court in this regard.  But while the Bankruptcy Court is correct that any claims under § 547(b)(4)(B) are to be excluded for this reason, this Court finds that only those amounts paid by the Debtor between ninety days and one year prior to filing for bankruptcy would be voidable.  Since the Trustee seeks only to recover as preferences the transfer of $28 million made *less than ninety days* before the date of the filing of the petition, those transfers are recoverable under § 547(b)(4)(A), regardless of whether the IRS was an insider.

In sum, the Court concludes that the Debtor's payments to the IRS were made "for the benefit of a creditor" and were made "on account of an antecedent debt owed by the debtor," such that summary judgment in favor of the United States as to payments made within ninety days prior to the filing of the petition was not appropriate.  Accordingly, the Bankruptcy Court's summary judgment in favor of the United States is VACATED with respect to the claim for

---

   (iii) person in control of the debtor;
   (iv) partnership in which the debtor is a general partner;
   (v) general partner of the debtor; or
   (vi) relative of a general partner, director, officer, or person in control of the debtor;
  (C) if the debtor is a partnership--
   (i) general partner in the debtor;
   (ii) relative of a general partner in, general partner of, or person in control of the debtor;
   (iii) partnership in which the debtor is a general partner;
   (iv) general partner of the debtor; or
   (v) person in control of the debtor;
  (D) if the debtor is a municipality, elected official of the debtor or relative of an elected official of the debtor;
  (E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and
  (F) managing agent of the debtor.

[10]  Section 547(b)(4)(B) provides, "Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider."

11

preferential payments made *less than ninety days* before the date of the filing of the petition and the claim is REMANDED to the Bankruptcy Court for further proceedings not inconsistent with this finding.

## IV.

The Trustee next challenges the Bankruptcy Court's determination that the payments to the IRS are not recoverable as fraudulent conveyances, either pursuant to 11 U.S.C. § 548 or Md. Code Ann., Comm. Law § 15-204 *et seq.*, incorporated by 11 U.S.C. § 544.

### A.

11 U.S.C. § 548 provides:

(a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily --
    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
    (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
    (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

In the present case, the Trustee has put forth no evidence to show that any payments actually made by the Debtor to the IRS were made in an effort to defraud anyone. Whatever payments it actually made to the IRS were probably among the Debtor's few actions which were *not* intended to defraud. The inquiry, then, hinges on the language in subpart (B) of § 548(a)(1): Whether the Debtor received less than reasonably equivalent value for the transfer <u>and</u> whether the transfer was made while the Debtor was insolvent.

12

The insolvency of the Debtor at the time of the transfer is clear beyond peradventure. However, the Bankruptcy Court found that "by payment to the IRS, debtor was relieved of the obligation to account to its client for the transfer of funds, and this appears to be reasonably equivalent value." On appeal, the Trustee argues that there was inadequate consideration for the transfer. But, especially in light of this Court's finding that the Debtor made payments to the IRS for the benefit of its own client creditors which were on account of its antecedent debt to those creditors, the Court finds itself in agreement with the Bankruptcy Court. Payment to the IRS on behalf of at least some of its clients (those who received credit on their taxes from the IRS) was certainly reasonably equivalent value for the discharge of its obligations to those clients. The Bankruptcy Court was correct to dismiss the claim to set aside under § 548.

**B.**

Finally, the Trustee seeks avoidance of the Debtor's transfer to the IRS pursuant to the Maryland Uniform Fraudulent Conveyance Act.[11] Md. Code Ann., Com. Law § 15-204 provides

---

[11] 11 U.S.C. § 544 grants the Trustee such avoidance rights as may exist under state law, as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . .

(b) (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable

that, "every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."

The Bankruptcy Court ruled against the Trustee on this claim on the ground that recovery was barred by the "voluntary payment doctrine," which provides that, "once a taxpayer voluntarily pays a tax or other governmental charge, under a mistake of law or under what he regards as an illegal imposition, no common law action lies for the recovery of the tax. . . ." *Apostol v. Anne Arundel County, Maryland*, 288 Md. 667, 672 (Md. 1980); *see also Field v. United States*, 301 B.R. 830 (D. Md. 2003). The Trustee disputes the applicability of the voluntary payment doctrine in this case, asserting that *Apostol* involved taxpayers who voluntarily paid their *own* taxes, whereas the present case involves funds of taxpayer A used to pay the taxes of taxpayer B without the consent of taxpayer A.

The Court finds this to be a distinction without a difference. It is clear that all the funds the Debtor did deliver to the IRS were legitimate tax payments to which the IRS was entitled, payable pursuant to the tax obligations of the Debtor's clients. Moreover, the initial payments by the clients to the Debtor were made voluntarily and for the purpose of paying their taxes. Simply because the Debtor may have mixed those funds and made some payments but not others does not change the voluntary nature of the original payments by the clients, nor does it taint the subsequent lump-sum payment by the Debtor to the IRS. Indeed, as the United States points out, while the Debtor unquestionably attempted to defraud its clients, it did so with respect to the

---

under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

payments it did <u>not</u> make to the IRS, not with the ones it did.  Because the payments made by the taxpayer clients to the Debtor were voluntary and for the purpose of paying taxes, and because the subsequent payment of those funds by the Debtor to the IRS discharged at least some of those tax obligations, the payments fall within the purview of the voluntary payment doctrine.  As such, they cannot be avoided as fraudulent conveyances under Maryland law.[12]

## V.

For the foregoing reasons, the Bankruptcy Court's Order of August 17, 2007 is AFFIRMED IN PART AND VACATED IN PART.  The Order is AFFIRMED with respect to its dismissal of all counts, except Count II (Avoidance of Preferential Transfers made within ninety days preceding the Petition Date under 11 U.S.C. § 547) and Count IX (Turnover of Avoided Preferential Payments under 11 U.S.C. § 550), as to which it is VACATED and those counts are REINSTATED.  As to those latter counts, the case is REMANDED to the Bankruptcy Court for proceedings not inconsistent with this Opinion.

A separate Order will ISSUE.

**August 3, 2007**

                   **/s/**
               **PETER J. MESSITTE**
           **UNITED STATES DISTRICT JUDGE**

---

[12] Had the Debtor held up its end of the contract with its clients and diligently paid each client's taxes, the paid taxes would clearly have been considered voluntary payments by the clients.  The mere fact that the Debtor, as middleman, may have held back some client funds did not render the client payments involuntary.

15